IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. 17-23 |
| | : | CIVIL ACTION NO. 20-5571 |
| IRVIN RANDALL NEWSWANGER | : | |

**<u>MEMORANDUM OPINION</u>**

Smith, J.                                                                                                    July 31, 2023

The right to effective assistance of counsel is paramount to the functionality of the criminal justice system. It is not enough for the defendant to have counsel in-name-only. Indigent defendants must receive adequate assistance at every critical stage of their case. The Sixth Amendment guarantees this right as it upholds the principles of justice and ensures a fair process for all accused.

Before the court is a petitioner, sentenced to 264 months of incarceration after pleading guilty to several counts. He argues that he did not receive his constitutionally guaranteed effective assistance of counsel. The petitioner contends that his counsel was ineffective for two reasons. First, counsel improperly instructed an expert to produce a report that did not consider all relevant sentencing factors. Second, petitioner avers that his counsel erroneously calculated his sentencing exposure and failed to secure a plea agreement within a range that had been discussed between counsel and the government. Further, he argues that but for the ineffective assistance provided by his plea counsel, he would have been sentenced within a range of 135 to 168 months. Thus, the petitioner moves to have the court vacate his sentence and resentence him within that range.

The petitioner is unable to show that his counsel's performance violated his Sixth Amendment right to effective assistance of counsel. First, his counsel executed a strategy, complete with strengths and weaknesses. The complained-of instructions were in accordance with

this strategy. Second, the petitioner cannot show—with any reasonable probability—that counsel could have secured a plea deal within the desired range. Thus, the petitioner fails to show that his counsel's performance was below an objective standard of reasonableness nor does the petitioner show with any reasonable probability that he was prejudiced by his attorney's actions of which he complains. The "best outcome possible" is not the standard used to assess the effectiveness of counsel. Attorneys can make mistakes, misjudgments, or be unsuccessful in certain aspects of a case, but so long as their performance was within a reasonable standard and the criminal justice process was fundamentally fair at all critical stages, the counsel's representation is not considered constitutionally ineffective. Accordingly, the court will deny the petitioner's motion.

## I.     PROCEDURAL HISTORY AND FINDINGS OF FACT

In January 2012, as part of an undercover operation conducted by the FBI's Innocent Images Operations Unit, the FBI received 20 images of child pornography transmitted from an individual with the username "randy4bois." Government's Plea Mem. at 3, Doc. No. 26. The FBI executed an administrative subpoena to the user's internet service provider and received the user's name and home address. *Id.* at 4. The FBI then executed a search warrant on the address, which was the home of the defendant, Irvin Randall Newswanger ("Newswanger"). *Id.* The FBI seized computers and other electronic media. *Id.* The FBI found over 300 images of child pornography on Newswanger's computers. *Id.* at 4–5. During the search of his residence, Newswanger admitted to viewing, downloading, and storing child pornography. *Id.* Newswanger also admitted to using a file sharing program to transfer child pornography. *Id.* The seized evidence from Newswanger's residence contained the same 20 images that had been transferred to the FBI. *See id.*

On January 12, 2017, a grand jury returned a two-count indictment charging Newswanger with one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), and

one count of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2). *See* Indictment at 1–2, Doc. No. 1. Newswanger was arraigned on January 19, 2017. Doc. Nos. 5, 8.

During the pretrial proceedings, Newswanger consistently communicated to his counsel, Attorney Susan Lin ("Attorney Lin") that he intended to plead guilty, even before Attorney Lin had made a calculation of his sentencing guideline range.[1] Tr. of Mot. Hr'g ("Tr. I") at 182, 190, Doc. No. 79; Pet'r's Mot. to Vacate Pursuant to 28 U.S.C. § 2255 and Consolidated Mem. of Law ("Pet'r's Mem. of Law") at 5, Doc. No. 58. Attorney Lin informed the prosecutor for the case, Assistant United States Attorney Roberta Benjamin ("AUSA Benjamin"), of Newswanger's intent to plead guilty. Tr. I at 190. During this time, Attorney Lin attempted to secure a plea agreement. *Id.* at 75–76. One instance, on May 19, 2017, Attorney Lin sent an email requesting a C plea for 9 years, which the government rejected. *Id.* at 75–77.

The government produced evidence that Newswanger had admitted to committing various sexual contact offenses with minors. *Id.* at 29, 81. In an online chat room, Newswanger admitted to engaging in sexual acts with his nephews—who were five, six, and nine at the time. *See* Government's Mot. For Pretrial Detention at 3–4, Doc. No. 7; *United States v. Newswanger*, 784 F. App'x 96, 97–98 (3d Cir. 2019). This was corroborated when investigators found images on Newswanger's memory card of these nephews in a hot tub with Newswanger and images of them naked in Newswanger's house. *See Newswanger*, 784 F. App'x at 97–98; Tr. of Detention Hr'g/Arraignment at 5–6, Doc. No. 53.

---

[1] Newswanger's current petition counsel concedes this: "The first thing I want to say is, as this Court knows, as Ms. Curran and Ms. Benjamin knows, Mr. Newswanger never wanted a trial, and obviously if -- you know, he -- he -- you know, he always wanted to plead guilty and he always wanted -- he always expected a significant punishment." Tr. I at 66 (statement from Attorney Karl Schwartz, petitioner's counsel).

Additionally, the FBI interviewed a minor, JW, who Newswanger had been assigned as a mentor as part of a Big Brothers Big Sisters of America program.[2] *See* Tr. of Detention Hr'g/Arraignment at 4–5; Government's Sentencing Mem. at 4–5, Doc. No. 39. JW stated that, starting when she was fourteen years old, Newswanger and his partner began giving JW drugs and alcohol, took erotic photographs of her, and engaged in sexual activity with her. *See Newswanger*, 784 F. App'x at 98; Government's Sentencing Mem. at 4–5. AUSA Benjamin had access to these FBI reports in March 2016, but did not interview JW until September 2017. Tr. I at 193, 195. In March and September of 2017, the government provided Attorney Lin with the FBI reports that documented Newswanger's sexual exploitation of JW. *Id.* at 29–31, 81. Newswanger consistently denied that he had committed these contact offenses, and he was never charged based on these allegations. *Id.* at 80–83, 115, 119–120, 190.

On July 6, 2017, the court held a change of plea hearing. *See* Tr. of Change of Plea Hr'g, Doc. No. 54. During this hearing, before entering his guilty plea, the court engaged in a detailed colloquy to ensure that Newswanger understood that, *inter alia*, (1) there was no plea agreement in place, nor was he promised or under the impression of the existence of one; (2) the elements of the offense and agreed his conduct met those elements; (3) he was waiving most of his rights, including his right to a trial; (4) there was no guarantee what sentence he would receive and that there are advisory Federal Sentencing Guidelines that the court would consider but was not bound by; and (5) the maximum sentence that could be imposed, including the mandatory minimum. *See* Tr. of Change of Plea Hr'g at 9–10. Additionally, the court discussed with Newswanger Attorney Lin's representation and Newswanger affirmed that she had fully explained his trial rights,

---

[2] "JW was assigned male at birth and named CW when she first met Newswanger in the Big Brother program. JW testified that she was transgender and was transitioning to female at the time of the sentencing hearing." *Newswanger*, 784 F. App'x at 98 n.1.

defenses he could bring to those charges, and that he was completely satisfied with her representation. *Id.* at 5, 9–10, 16, 19. The court found that Newswanger knowingly and voluntarily entered his plea, and his guilt was supported by an independent basis of fact for each of the four essential elements of the offenses to which Newswanger pled. *See id.* at 33–34.

Initially, both Attorney Lin and AUSA Benjamin presented a sentencing guideline range of 135 to 168 months. *See* Tr. of Detention Hr'g/Arraignment at 3 (AUSA Benjamin telling the court "the potential sentencing guideline range" is "I believe, 135 to 168 months is the initial sort of calculation that we have done."); *see also* Tr. I at 48 (Attorney Lin stating she thought the range was 135 to 168 months). Further, this guideline range was mentioned by AUSA Benjamin and Attorney Lin numerous times, including in the January 18, 2017 Government's Motion for Pretrial Detention,[3] Attorney Lin's notes from January 2017 stating "[g]uidelines, 135 to 168…,"[4] a January 26, 2017 email to lawyers of victims,[5] and in an email dated June 13, 2017 in which AUSA Benjamin restated this guideline range as "possibly 135 to 168 with a mandatory 60 months."[6] The court is satisfied that "everybody – both sides thought it was 135 to 168" months. Tr. I at 64. These guidelines were discussed as the two sides were engaged in preliminary plea negotiations. Tr. I at 19–20, 74–76. However, these negotiations and preliminary plea guidelines did not result in any formal plea agreement. Tr. I at 95, 103, 125, 214. In the end, Newswanger entered an open plea of guilty to both counts of the indictment in July 2017.[7] *See* Tr. of Change of Plea Hr'g at 33.

---

[3] Doc. No. 7.

[4] Tr. I at 53 (Attorney Lin's testimony to her written notes at that time).

[5] AUSA Benjamin, in this email, states "the range might be either 135 to 168 months, mandatory 60 months or 108 to 135 months, mandatory 60 months. The difference has to do with the applicability of the two-level enhancement for use of computer under the U.S. sentencing guidelines." Tr. I at 54–56; Pet'r's Post-Hr'g Mem. and Suppl. to 2255 Pet. ("Pet'r's Post-Hr'g Mem.") at 2, Doc. No. 86.

[6] Tr. I at 212 (AUSA Benjamin testimony).

[7] "An 'open' guilty plea is a plea made by the defendant without the benefit of a plea agreement entered into with the Government." *United States v. Booth*, 432 F.3d 542, 543 n.1 (3d Cir. 2005) (citation omitted).

Before the sentencing hearing held on March 15, 2018, the Probation Office prepared a presentence report ("PSR"), which the court adopted, finding the base offense level was a 22 under U.S.S.G. § 2G2.2, and ultimately the adjusted offense level totaled 41 which resulted in a sentencing guideline range of 324 to 405 months. Tr. of Sentencing Hr'g at 111, 148–49, Doc. No. 52. Newswanger claimed that the proper offense level was 34, with the advisory sentencing guidelines range of 151 to 188 months. *See* Def.'s Sentencing Mem. at 9–10, Doc. No. 41. Meanwhile, the government claimed that the proper offense level was 41, with the advisory sentencing guidelines of 324 to 405 months. *See* Government's Sentencing Mem. at 2. The discrepancy between the two parties' calculated guideline range was due to a potential five-level enhancement for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor ("contact offense") under USSG § 2G2.2(b)(5) and a two-level enhancement for use of a computer under USSG § 2G2.2(b)(6). See Def.'s Sentencing Mem. at 9–10. At the sentencing hearing, Newswanger again denied that there had been any sexual contact between himself and the minors. *Newswanger*, 784 F. App'x at 99; Tr. of Sentencing Hr'g at 142.

At the sentencing hearing, Attorney Lin presented expert testimony from Dr. Timothy Foley ("Dr. Foley"), a psychologist who had performed a psychosexual evaluation of Newswanger to determine his risk of recidivism. Tr. I at 77–78; Tr. of Sentencing Hr'g at 103. In preparing his report, Dr. Foley assumed that there were no prior contact offenses at the instruction of Attorney Lin so that the report would be consistent with Newswanger's position that he had not committed any such offenses. *See* Tr. of Sentencing Hr'g at 103–05. The court questioned Attorney Lin whether Dr. Foley's conclusions would be different if there was proof of a prior contact offense. *See id.* The court found that there was sufficient evidence to support the five-level enhancement for a pattern of activity involving sexual abuse or exploitation of a minor and the two-level

enhancement for use of a computer.[8] *See id.* at 111. The court found that the proper offense level was 41, with a criminal history category of I, resulting in an advisory guideline range of 324 to 405 months. *Id.*

The "[c]ourt concluded that 18 U.S.C. § 3553(a) factors supported a downward variance[.]" *Newswanger*, 784 F. App'x at 98. The court sentenced Newswanger to, *inter alia*, 264 months of incarceration,[9] followed by 20 years of supervised release, and ordered him to pay $9,000 in restitution, a $25,000 fine, and a $200 special assessment. *See* Mar. 28, 2018 Judgment at ECF pp. 2–6, Doc. No. 45. Newswanger filed a direct appeal of his conviction and sentence to the Third Circuit. *See* Doc. No. 43. The Third Circuit summarily affirmed the judgment of conviction and sentence. Doc. No. 56.

---

[8] Newswanger continued to argue that he did not commit any contact offense and that was part of his direct appeal to the United States Court of Appeals for the Third Circuit. *See Newswanger*, 784 F. App'x at 98–99. The Third Circuit rejected Newswanger's argument and affirmed the court's application of the five-level enhancement. *Id.* at 99. The use of the computer enhancement was not contested on direct appeal. *Id.*

[9] The sentence fell below the advisory sentencing range of 324–405 months. In granting a downward variance, the court evaluated the totality of the circumstances, including Newswanger's background, the criminal acts, and Newswanger's efforts to improve himself after the child pornography was discovered. For example, between 2012 and the indictment in 2017, Newswanger began receiving treatment for addiction to drugs and alcohol as well as attending mental health counseling. At the sentencing hearing, the court stated:

> And it's not easy, even for the Court, with all these evaluations, et cetera, to understand how that could be, whether you were tormented that led to drug and alcohol use, whether you had an addiction that led to child pornography, whatever it might be, it all changed in 2012. Because there is no indication, and in fact all evidence to the contrary with all these letters that have been submitted, et cetera, that you've been very faithful to AA, you've been very faithful to sobriety, you've been very faithful with respect to your husband. … And I do absolutely agree with Attorney Lin that what you've done since 2012 till now should absolutely be considered by this Court in trying to tailor an appropriate sentence.

Tr. of Sentencing Hr'g at 144–45. Moreover, the court stated:

> I am very much convinced of your remorse, very much convinced that you are committed to sobriety, I am very much convinced that you are committed to treatment to ensure that whatever addiction led you to this child pornography that you will fight it and do whatever is necessary to ensure that it does not result in you running afoul of the law.

*Id.* at 146.

On November 7, 2020, Newswanger filed the instant petition under 28 U.S.C. § 2255 alleging that his plea counsel was ineffective based on two theories: (1) plea counsel was ineffective in instructing an expert to produce a report that did not consider all relevant sentencing factors, notably evidence of prior sexual contact offenses; and (2) plea counsel erroneously calculated Newswanger's potential sentencing guideline range, and failed to secure a plea agreement within the range contemplated by the parties. *See* Pet'r's Mem. of Law at 4–24, 27–32. Due to these two errors, Newswanger argues that he is entitled to habeas relief. *See id.* at 37. The government filed a response in opposition to Newswanger's petition. *See* Doc. No. 63. On November 8, 2021, the court held an evidentiary hearing on the petition. *See* Doc. No. 75. The court heard testimony from Newswanger, Attorney Susan Lin,[10] Dr. Jennifer Weeks,[11] and Assistant United States Attorney Roberta Benjamin.[12] *See* Tr. I at 17, 137, 168, 185. On March 8, 2022, Newswanger filed a post-hearing memorandum and supplement to his section 2255 petition, reasserting his claims of ineffective assistance of counsel. *See* Pet'r's Post-Hr'g Mem. and Suppl. to 2255 Pet. ("Pet'r's Post-Hr'g Mem."), Doc. No. 86. The government filed a post-hearing memorandum and supplemental response in opposition of Newswanger's claims on April 22, 2022. *See* Government's Post-Hr'g Mem. and Suppl. Resp. to Def.'s Pet. Under 28 U.S.C. § 2255 ("Gov't Post-Hr'g Mem."), Doc. No. 89. The court held oral argument on June 6, 2022. *See* Doc. No. 91. The motion is ripe for review.

## II.    DISCUSSION

---

[10] Attorney Lin represented Newswanger before he pled guilty and through the direct appeals process.

[11] Dr. Weeks has her doctorate in psychology with an expertise in treating problematic sexual behavior. *See* Tr. I at 137–38. Dr. Weeks was retained by Newswanger to prepare a revised psychological evaluation and testified during the evidentiary hearing on the instant motion that she had analyzed Dr. Foley's report and considered it to be "an excellent report" and not "anything missing." *See id.* at 156. Dr. Weeks produced her own report, while similar to Dr. Foley's, but included the assumption of prior contact offenses. *Id.* Dr Weeks report had a higher risk of re-offense but "not a significant increase." *See id.* at 143, 144–45, 151–53.

[12] Assistant United States Attorney Benjamin served as the line prosecutor handling Newswanger's case. *See* Tr. I at 186–87.

### A.  Applicable Legal Standard for Section 2255 Motions Generally

Section 2255 allows an individual serving a federal sentence to "move the court which imposed the sentence to vacate, set aside or correct the sentence" based

> upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255(a). Ultimately,

> [i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

*Id.* § 2255(b). In addition, when seeking collateral relief under section 2255,

> a prisoner must clear a significantly higher hurdle than would exist on direct appeal. Because of the great interest in finality of judgments, an error which may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment. Indeed, the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas. This is because the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea.

*United States v. Cleary*, 46 F.3d 307, 310 (3d Cir. 1995) (internal footnote omitted). Moreover,

> a motion pursuant to [section] 2255 is reviewed much less favorably than a direct appeal of the sentence. Indeed, relief under § 2255 is available only when the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ . . . is apparent.

*United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (alteration and omissions in original).

### B.  Ineffective Assistance of Counsel Claims

Criminal defendants have

> [t]he right to effective counsel[, which] is derived from the guarantee of a fair trial in the Due Process Clause, and the elements of a fair trial are defined through the

> Sixth Amendment. The Sixth Amendment recognizes the right to effective assistance because it envisions counsel[ is] playing a role that is critical to the ability of the adversarial system to produce just results. Accordingly, [a]n accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair.

*United States v. Senke*, 986 F.3d 300, 313 (3d Cir. 2021) (last alteration in original) (internal

footnotes and quotation marks omitted), *cert. denied*, 142 S. Ct. 367 (2021). When addressing

claims for ineffective assistance of counsel, courts

> reference . . . the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To secure relief based on alleged ineffective assistance of counsel, the *Strickland* framework requires a defendant to "show that counsel's performance was deficient" by proving "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" through a showing that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 687–88. If a defendant can prove constitutionally deficient performance, the defendant must also "show that the deficient performance prejudiced the defense" before a court may grant relief. *Id.* at 678.

*United States v. Braddy*, No. 22-1926, 2023 WL 3533649, at *2 (3d Cir. May 18, 2023).

In summary, to succeed on an ineffective assistance of counsel claim, the petitioner bears

the burden of showing two prongs: (1) that counsel's representation fell below an objective

standard of reasonableness and (2) that he or she was prejudiced by counsel's unreasonable

performance. *See Strickland*, 466 U.S. at 687. Under the first *Strickland* prong, the movant must

show that counsel fell short of "reasonably effective assistance" by overcoming the presumption

that counsel's decision was "sound trial strategy." *Strickland*, 466 U.S. at 689. Thus, to support

their claim of ineffective assistance of counsel, the movant must identify those acts or omissions

of counsel that are allegedly not the result of "reasonable professional judgment." *Id.* at 690. Then

the court determines whether the identified acts or omissions of counsel fell "outside the wide

range of professionally competent assistance," bearing in mind the strong presumption that counsel

has "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Under the second *Strickland* prong, commonly referred to as the prejudice prong, the movant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. So, "[w]hen a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

When assessing prejudice,

> a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id.* at 695–96. In addition, the most important practical consideration when applying the *Strickland* standard is that

> in adjudicating a claim of actual ineffectiveness of counsel, a court should keep in mind that the principles we have stated do not establish mechanical rules. Although those principles should guide the process of decision, the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.

*Id.* at 696.

## C.  <u>ANALYSIS</u>

### 1.  Ineffective Counsel Claim: Expert Witness

Newswanger first argues that Attorney Lin provided ineffective assistance because she failed to provide Dr. Foley, the psychologist retained to prepare a report analyzing the defendant's risk of recidivism, with the evidence that Newswanger had committed prior contact offenses with minors. *See* Pet'r's Mem. of Law at 28–35; Pet'r's Post-Hr'g Mem. at 29–36. According to Newswanger, Attorney Lin was obligated to instruct Dr. Foley to conduct an alternative analysis assuming that Newswanger had sexually abused minors and if she had, Newswanger would have received a more lenient sentence. *See id.* Newswanger asserts that there was no reasonable basis for Attorney Lin to have limited Dr. Foley in this regard. *Id.*

To demonstrate that his counsel was ineffective, Newswanger "'must [first] show that counsel's representation fell below an objective standard of reasonableness.'" *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002) (quoting *Strickland*, 466 U.S. at 687–88). "A court 'deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, *viewed as of the time of counsel's conduct.*'" *United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). "[A] defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial." *Massaro v. United States*, 538 U.S. 500, 505 (2003). Thus, to support their claim of ineffective assistance of counsel, Newswanger must identify those acts or omissions of counsel that are allegedly not the result of "reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Here, Newswanger fails to meet his burden. *See Strickland*, 466 U.S. at 681 ("[W]hen counsel's assumptions are reasonable given the totality of the circumstances and when counsel's strategy represents a reasonable choice based upon those assumptions, counsel need not investigate lines of defense that he has chosen not to employ at trial."). Attorney Lin testified that she made a

12

strategic decision to produce a report that assumed there had been no prior contact offenses. *See* Tr. I at 84–85. She hired Dr. Foley before Newswanger had entered his guilty plea and hoped to use his report "in the course of plea negotiations." *See id.* at 80. She believed that a report assuming no prior contact offenses could facilitate a plea deal with a lower recommended sentence. *See id.* at 80–83. At that time, the government had not charged Newswanger with contact offenses. *Id*.

Moreover, it was Newswanger's position when Dr. Foley was hired, throughout sentencing, and on direct appeal that he had not engaged in any prior contact offenses with minors. Tr. I at 80–83, 113–114, 118, 121; *see also Newswanger*, 784 F. App'x at 98–99 (discussing appropriateness of applying contact offense sentencing enhancement). Attorney Lin thought that it would be "strategically advantageous to present a report that did not include . . . an alternative finding assuming prior sexual contact." Tr. I at 81–82; *see also id.* at 83 (explaining sentencing presentation was designed to be consistent with position of no prior contact offenses with minors). Attorney Lin testified that she believed a consistent approach would yield better results. *See id* at 85. Attorney Lin's performance was a tactical decision, even if it did not yield the desired result. *See Strickland*, 466 U.S. at 689 (holding courts must respect the "wide latitude counsel must have in making tactical decisions."); *see also Wilcox v. Warden N.J. State Prison*, 720 F. App'x 669, 674–75 (3d Cir. 2018) (holding counsel's decision to not present expert reports inconsistent with strategy does not amount to ineffective assistance).

Further, the Court in *Strickland* contemplated similar decision-making in strategy for a criminal defense:

> If counsel does not conduct a substantial investigation into each of several plausible lines of defense, assistance may nonetheless be effective. . . . Thus, "when counsel's assumptions are reasonable given the totality of the circumstances and when counsel's strategy represents a reasonable choice based upon those assumptions, counsel need not investigate lines of defense that he has chosen not to employ at trial."

*Strickland*, 466 U.S. at 681. Attorney Lin's strategy was reasonable based on the totality of the circumstances. She made a reasonable assumption that Newswanger did not commit contact offenses and wanted Dr. Foley's report to be consistent with her overarching strategy at the time.

Ultimately, Newswanger must show that Attorney Lin's actions were not part and parcel with "a reasonable strategy." *See Massaro*, 538 U.S. at 505 (2003) (citing *Strickland*, 466 U.S. 668). It was a reasonable strategy by Newswanger to deny these contact offenses as it was unclear how the court would rule on the issue. *See* Tr. I at 126. Attorney Lin made a reasonable strategic decision to present a consistent argument, including asking Dr. Foley to assume the contact offenses did not occur. Accordingly, Newswanger fails to show that Attorney Lin's actions were not a reasonable strategy. Therefore, the court rejects Newswanger's ineffective counsel claim under 28 U.S.C. § 2255 regarding the retention of and instructions to the expert witness used at sentencing. As Newswanger does not prove the first prong of Strickland regarding ineffective counsel, the court need not examine the prejudice prong of Strickland for this claim.[13]

### 2. Ineffective Counsel Claim: Securing Plea Deal Within Desired Range

Second, Newswanger argues that Attorney Lin provided ineffective assistance of counsel for miscalculating the sentencing guideline range and failing to secure a plea deal within the expected range. *See* Pet'r's Mem. of Law at 4–26; Pet'r's Post-Hr'g Mem. at 8–28. Further, he states that due to this miscalculated range, Attorney Lin did not try to negotiate a plea offer in the

---

[13] Even if Newswanger could satisfy the first prong of *Strickland*, he could not prove he was prejudiced by his counsel's actions. *See* 466 U.S. at 687. In Dr. Foley's report, he notes that "corroboration of allegations cited in this report would increase this risk appraisal." Gov't Post-Hr'g Mem. at 19 (quoting appendix to petitioner's 2255 motion). Dr. Foley had stated in his report that if there was corroboration of contact offenses, it would have potentially increased his risk-of-recidivism appraisal for Newswanger. *Id.* Had Dr. Foley considered the evidence of the contact offenses, Newswanger's sentence would likely not have changed. Under *Strickland*, there is not enough evidence to prove that there is a reasonable probability that, but for counsel's alleged errors regarding the expert witness, the result of the sentencing hearing would have been different. Therefore, Attorney Lin's decision to have Dr. Foley assume there had been no contact offenses did not prejudice Newswanger.

range of 135 to 168 months since she believed that this range was the most severe sentencing Newswanger might receive. Pet'r's Mem. of Law at 4–5. Newswanger states that a plea offer in this range was "there for the asking," and but for Attorney Lin's errors, the result of the proceeding would have been different, as Newswanger would have received a more favorable sentence than the 264 months he received via an open guilty plea. Pet'r's Post-Hr'g Mem. at 8.

As stated above, both Attorney Lin and AUSA Benjamin believed that the proper sentencing range for Newswanger was 135 to 168 months before the change of plea hearing in July 2017. This belief changed between the change of plea hearing and the sentencing hearing due to the evidence of contact offenses ultimately leading the court to apply a five-level sentencing enhancement resulting in an advisory sentencing guideline range of 324 to 405 months. At bottom, Newswanger's main contention is that Attorney Lin should have realized that the five-levels for prior contact offense under 2G2.2(b)(5) was going to apply and could have secured a more favorable plea deal with the government. Pet'r's Post-Hr'g Mem. at 8–28. Newswanger claims that the only reason Attorney Lin requested a nine-year plea agreement was because she thought the guidelines were 135 to 168 months. *Id.* He states that if she recognized his true sentencing exposure, she would have negotiated a plea within a range of the 135 to 168 months. *See id.* Even if she was still unable to secure a plea in this lower range, Newswanger could then "make his determination whether he wanted to roll the dice and go to trial, [or] whether he wanted to still plead guilty." Tr. I at 61.

However, the government is correct that, any miscalculation Attorney Lin's made determining Newswanger's sentencing exposure under the sentencing guidelines and her failure to secure Newswanger a plea deal do not rise to the level of constitutionally ineffective assistance of counsel. Likewise, Newswanger fails to show that there is a reasonable probability that he would

15

have received a sentence more favorable than the 264-month sentence he received. *See* Pet'r's Post-Hr'g Mem. at 8; Government's Post-Hr'g Mem. at 14–15.

### a. Calculation of Sentencing Guidelines

Newswanger argues that Attorney Lin miscalculated his sentencing guideline range, denying him an informed and knowing plea. *See* Pet'r's Mem. of Law at 4–13. However, the Third Circuit has held that alleged failure to advise defendant about a potential enhancement or upward departure at sentencing does not prejudice defendant, and thus is not ineffective assistance of counsel, where an in-court colloquy clearly established the defendant's maximum potential exposure and the court's discretion in sentencing. *See United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007).

> [A]n erroneous sentencing prediction by counsel is not ineffective assistance of counsel where, as here, an adequate plea hearing was conducted. *See*, *e.g.*, *United States v. Jones*, 336 F.3d 245, 254 (3d Cir. 2003) (counsel not ineffective for allegedly promising defendant a sentence of "no more than 71 months" where defendant was advised in open-court colloquy of potential maximum sentence and there were no other promises regarding sentence); *United States v. Mustafa*, 238 F.3d 485, 492 (3d Cir. 2001) ("[A]ny alleged misrepresentations that [defendant's] former counsel may have made regarding sentencing calculations were dispelled when [defendant] was informed in open court that there was no guarantee as to sentence, and that the court could sentence him to the maximum."); *Masciola v. United States*, 469 F.2d 1057, 1059 (3d Cir. 1972) (*per curiam*) (holding that "[a]n erroneous prediction of a sentence by defendant's counsel does not render a guilty plea involuntary" where record demonstrates that a proper plea colloquy took place during which defendant acknowledged that he was aware of his maximum potential sentence).

*Id.* at 299. Similarly, here, the court conducted an in-depth colloquy at the change of plea hearing with Newswanger. The court repeated that, *inter alia*, Newswanger's maximum sentence of 40 years, there was no plea agreement in place, and his actual sentence would be determined by the court. *See* Tr. of Change of Plea Hr'g at 9–33. Like in *Shedrick*, any possible error in plea counsel's advice to Newswanger was cured at the plea colloquy. Therefore, Newswanger did not suffer

prejudice as a result of any alleged deficient performance by plea counsel for sentencing calculations.

b.   Failure to Secure Plea Deal

Next, Newswanger argues that Attorney Lin provided ineffective assistance by failing to secure a plea deal within the initially contemplated range of 135 to 168 months. He contends that he was prejudiced because the sentence imposed was more severe than if he had received a plea agreement. Pet'r's Post-Hr'g Mem. at 8. Courts "may address the performance and prejudice components in any order, but need not address both if [the petitioner] fails to make a sufficient showing of one." *See Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999); *see also Cross*, 308 F.3d at 315 (explaining failure to satisfy either *Strickland* prong defeats ineffective assistance claim). The court will start with the second prong of the *Strickland* ineffective-assistance-of-counsel standard—prejudice. *See Cross*, 308 F.3d at 315 (beginning ineffective-assistance-of-counsel analysis with prejudice prong).

When a formal plea offer is extended, counsel may be found to have been ineffective when failing to communicate the plea offer to the defendant. *Shnewer v. United States*, 703 F. App'x 85, 88 (3d Cir. 2017) (citing *Missouri v. Frye*, 566 U.S. 134, 145 (2012)) ("Since *Strickland*, the Supreme Court has identified certain duties of defense counsel that, when not met, may give rise to ineffective assistance claims. . . . [A]mong them is defense counsel's duty to communicate formal plea offers to the defendant."). Additionally, the Supreme Court has confirmed that where "a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler v. Cooper*, 566 U.S. 156, 168 (2012). However, "defendants have 'no right to be offered a plea . . . nor a federal right that the judge accept it.' . . . If no plea offer is made, or a plea deal is accepted by the defendant but rejected by the judge" the

defendant cannot show prejudice. *Id.* (quoting *Frye*, 132 S. Ct. at 1410) (cleaned up). Here, no formal or final plea offer was ever extended by the government to Newswanger. *See* Tr. I at 94–95 (Attorney Lin stating that "[t]here were plea negotiations. I would never say that there was an actual final offer made."); *Id.* at 188 (AUSA Benjamin testifying that no plea offer was ever extended to Newswanger by government). Newswanger is unable to rely on failure to communicate or advise regarding a plea offer to show prejudice. *See Frye*, 132 S. Ct. at 1410.

But, the record does show there were plea negotiations between Attorney Lin and the government. Newswanger argues that these plea discussions are sufficient to satisfy the prejudice prong. See Pet'r's Post-Hr'g Mem. at 8–12. The government disagrees, stating a formal offer is required to show prejudice under *Strickland*. Government's Post-Hr'g Mem. at 8–12. Courts are split on whether a formal offering of a plea deal is required to show prejudice under *Strickland* when advancing a plea-related ineffective-assistance-of-counsel claims.[14] *See Byrd v. Skipper*, 940 F.3d 248, 263–264 (6th Cir. 2019) (Griffin, C.J. dissenting) (collecting cases). Several Circuit Courts of Appeals have held that attorneys have a duty to pursue a plea offer from a willing prosecutor or act upon an informal offer.[15]  For example, in *Byrd v. Skipper*, 940 F.3d 248 (6th

---

[14] In *Davis v. United States*, 143 S. Ct. 647 (2023), the Supreme Court denied the petition for a writ of certiorari in a case where the Eleventh Circuit had held that because petitioner did not have an actual plea offer, the petitioner's ineffective assistance of counsel *per se* fails the prejudice prong. *See Davis v. United States*, No. 20-11149, 2022 WL 402915, at *2 (11th Cir. Feb. 10, 2022). Dissenting from the denial of certiorari, Justice Jackson noted the circuit split on this matter. *See Davis v. United States*, 143 S. Ct. at 647–48 ("This petition presents the Court with a clear opportunity to resolve a Circuit split regarding whether having an actual plea offer is an indispensable prerequisite to making the necessary showing of prejudice.") (Jackson, J., dissenting).

[15] Newswanger cites *Byrd* among other persuasive but non-binding cases for their contention that plea negotiations are covered under the Sixth Amendment. *See* Pet'r's Post-Hr'g Mem. at 8–12. The government cites numerous non-precedential cases as well, opposing this view, arguing that defendants alleging ineffective assistance of counsel in the plea-bargaining process must show that a formal plea offer was made. *See* Government's Post-Hr'g Mem. at 8–12. The government citations include, among other cases, *United States v. Waters*, No. 13-115, 2013 WL 3949092, at *8 (E.D. Pa. July 31, 2013) ("Consequently, the existence of a formal plea offer is a crucial element of [petitioner]'s claim. While we have been unable to find any authority defining the requisite elements of a formal plea offer, it is clear that an oral discussion of the sentencing range for a possible plea agreement that does not include an agreement on the charges to which the defendant will plead guilty and the facts that he will admit, does not constitute a formal plea offer. *See Enright v. United States*, 347 F.Supp.2d 159, 165 (D.N.J.2004)." (alteration in original)).

Cir. 2019), the Sixth Circuit Court of Appeals held that the attorney provided ineffective assistance

of counsel when

> the petitioner never received a plea offer despite the prosecutor's willingness to
> negotiate an agreement in a county where the judges usually accepted such pleas,
> because trial counsel, based on "a thoroughly unreasonable misunderstanding of
> the law" and a grossly misguided belief that he could acquire an acquittal, never
> inquired about one. We found prejudice because the petitioner testified that he
> would have accepted a lesser plea and offered sworn testimony from the prosecutor
> that his office had a practice of waiting for defense counsel to initiate negotiations
> and that the county judges "rarely reject plea agreements."

*Gilbert v. United States*, 64 F.4th 763, 773 (6th Cir. 2023) (quoting *Byrd*, 940 F.3d at 252–60)

(internal citations omitted). Other circuits have held that a plea offer must have been made and not

communicated to a defendant to show prejudice. *See, e.g*, *David v. United States*, No. 20-11149,

2022 WL 402915, at *2 (11th Cir. 2022) (*per curiam*) (finding petitioner could not show prejudice

when no plea deal was offered and no allegations he would have accepted plea deal).

The Third Circuit has not directly addressed this issue in a precedential opinion.[16] District

courts within the Third Circuit have held that a formal plea offer is necessary to show prejudice.

*See, e.g.*, *United States v. Evans*, No. 18-219, 2023 WL 3627848, at *4 (E.D. Pa. May 23, 2023)

(holding there cannot be ineffective assistance of counsel when petitioner plead guilty without a

plea agreement, "the Government . . . controls whether and on what terms to offer" a plea, and the

government did not make an offer "so there was nothing for counsel to accept or reject."); *see also*

*United States v. Matusiewicz*, No. 13-83-1, 2022 WL 2177746, at *3–4 (D. Del. June 16, 2022)

(holding there was no basis for ineffective assistance of counsel where no plea agreement "was

ever offered by the Government or would have been offered"); *United States v. Penn*, No. 12-240,

2020 WL 6701022, at *8 (W.D. Pa Nov. 13, 2020) (holding where no formal plea offer has been

---

[16] In *United States v. Ngyuen*, in a non-precedential decision, the Third Circuit held that "to establish prejudice,
Petitioner must begin by proving that a plea agreement was formally offered by the Government." 619 F. App'x 136,
141 (3d Cir. 2015).

made, claim of ineffective assistance of counsel in plea-bargaining process does not arise); *United States v. Slane*, No. 11-81, 2015 WL 728481, at *16–17 (W.D. Pa. Feb. 19, 2015) (same). In *Shnewer*, the Third Circuit declined to examine this issue, stating "[h]ere, we need not consider whether trial counsel has such a duty with respect to informal plea offers or preliminary plea negotiations because, as will be discussed, [petitioner] cannot satisfy *Strickland*'s prejudice requirement in any event." 703 F. App'x at 88 n.1 (alteration in original).

Like in *Shnewer*, because Newswanger cannot demonstrate prejudice, the court need not address the issue of whether a petitioner can make such a showing absent evidence of a formal plea offer. *Id.* at 88. The second prong of *Strickland* requires that the petitioner "show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Frye*, 566 U.S. at 147. The second element of the *Strickland* test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Lafler*, 566 U.S. at 163–64. Where a petitioner alleges that his decision not to enter into a plea agreement was the result of his counsel's ineffective advice, the petitioner "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 566 U.S. at 164. "A petitioner must demonstrate a reasonable probability that each of these events would have occurred absent counsel's deficient performance." *Hendricks v. United States*,

No. 04-05, 2018 WL 4658678, at *3 n.4 (D.V.I. Sept. 27, 2018) (citing *Shnewer*, 703 F. App'x at 88).

Thus, to show prejudice, Newswanger would need to demonstrate that it was reasonably probable that (1) the prosecutor would have offered him the particular deal, (2) the deal would have resulted in a sentence less than the sentence Newswanger received, and (3) the court would have accepted the deal's terms. *See Shnewer*, 703 F. App'x at 88; *Lafler*, 566 U.S. at 164. "Failure to show any one of those three facts is fatal to [petitioner's] claim." *Shnewer*, 703 F. App'x at 88 (alteration to the original). Newswanger is unable to make any of these showings and thus, is not entitled to relief on this point.

c.   No Reasonable Probability Newswanger's Desired Plea Agreement Would Have Been Offered

Newswanger must overcome three hurdles to prove with a reasonable probability that an offer in the range of 135 to 168 months would have been made but for ineffective assistance of counsel: (1) the government was aware of Newswanger's intent to plead guilty from the earliest stages of this case and was not incentivized to offer such a plea deal, *see* Tr. I at 21, (2) the parties never got past the early stages of negotiation, such as by drafting a plea deal, *see id.* at 190–91; and (3) any plea deal within the range desired by Newswanger would need to have been reviewed and approved by the supervising Assistant United States Attorney. *See id.* at 215–18. Newswanger fails to overcome any of these three hurdles and thus, cannot make a showing of prejudice.

First, the government was aware that Newswanger intended to plead guilty. As stated previously, Newswanger wished to take responsibility for his actions and did not want to go to trial. *Id.* at 21; *id.* at 168, 172, 181–82 (Newswanger testifying he wanted to plead guilty regardless of guideline range); *id.* at 190, 213 (AUSA Benjamin testifying she knew Newswanger was going to plead guilty from beginning of case). Attorney Lin even wrote an email on May 19, 2017 to

AUSA Benjamin stating "[t]his case will be resolved either through an open guilty plea or a guilty plea agreement. It will not be a trial." *Id.* at 58. Attorney Lin attempted to secure a plea deal but the government rejected her offers. *See id.* at 75–76. The government had no incentive to offer a plea deal to Newswanger and showed no desire to do so. *See id.* at 75–76, 186–88.

When the prosecutor is willing to negotiate a plea deal but the defense counsel fails to pursue this option, courts have found attorneys' actions to be ineffective. *See, e.g.*, *Byrd*, 940 F.3d at 252–53; *United States v. Pender*, 514 F. App'x 359, 361 (4th Cir. 2013). For example, in *Byrd*, the Sixth Circuit held that an attorney provided ineffective assistance when the counsel failed to request a plea deal from a willing prosecutor. *See* 940 F.3d at 252–60; *see also Pender*, 514 F. App'x at 361 (finding counsel ineffective when unreasonably failing to pursue plea agreement which would have been available). The facts here are inapposite. *See Byrd,* 940 F.3d at 251–54. Unlike in *Byrd*, Attorney Lin tried to secure a plea deal. *See id.* at 252. For example, Attorney Lin requested a C plea with a 9-year sentence which was ultimately rejected by the government. *See id.*; Tr. I at 75–76. Moreover, the government never provided a firm counteroffer to her plea negotiations. *See id.* Under the instant circumstances, it appears unlikely that the government was willing to negotiate a plea agreement within the range of 135 to 168 months. *See* Tr. I at 75–76, 186–88; *Byrd*, 940 F.3d at 252–53; *Waters*, 2013 WL 3949092, at *9 (crediting prosecutor's testimony regarding hypothetical plea offer sentencing range).

Second, Newswanger argues that Attorney Lin could have secured a plea agreement within a range of 135 to 168 months had she pursued it. Pet'r's Post-Hr'g Mem. at 20, 22. But, the preliminary nature of the plea negotiations that did occur between Attorney Lin and AUSA Benjamin demonstrate that this argument is far too speculative to show with a reasonable probability that Newswanger could have received such a plea deal but for Attorney Lin's actions.

*See United States v. Gonzalez–Rivera*, 217 F. App'x 166, 170 (3d Cir. 2007) ("The alleged prejudice that he may have suffered as a result is far too speculative."); *Waters*, 2013 WL 3949092, at *8 ("[I]t is clear that an oral discussion of the sentencing range for a possible plea agreement that does not include an agreement on the charges to which the defendant will plead guilty and the facts that he will admit, does not constitute a formal plea offer."); *Penn*, 2020 WL 6701022, at *8 (explaining prejudice cannot be established when "preliminary negotiations between counsel took place that never ripened into an enforceable agreement"); *Slane*, 2015 WL 728481, at *25 ("[N]o plea agreement was ever drafted by the prosecutor in this case, rendering such remedy to be highly speculative.").

Newswanger claims that a May 2017 email from AUSA Benjamin to Attorney Lin in which AUSA Benjamin states "are you ready for me to draft a plea agreement" implied that "terms had been agreed upon." Pet'r's Post-Hr'g Mem. at 22. However, according to AUSA Benjamin, this email was part of her normal practice in which she would ask defense counsel if they were ready to work out a plea deal. *See* Tr. I at 189–190 (explaining usual discourse between AUSA and defense counsels during early stages of plea negotiations). Although the sentencing range of 135 to 168 months had been discussed, AUSA Benjamin stated that she had "absolutely . . . nothing in mind" in response to questioning from Newswanger's petition counsel. *Id.* at 190. Newswanger has not convinced the court, with any degree of reasonable probability, that Attorney Lin's actions deprived him of a more favorable sentencing outcome. *See Frye*, 566 U.S. at 147; *United States v. Shazad*, No. 21-477, 2023 WL 3983794, at *5 (E.D. Pa. June 13, 2023) (failing to find ineffective assistance of counsel when petitioner fails to show that government would have offered him particular plea or that he would have accepted).

Third, assuming *arguendo* that had Attorney Lin requested a plea with a sentencing range of 135 to 168 months and that AUSA Benjamin would have agreed, there were numerous steps needed before AUSA Benjamin could have offered Newswanger a formal plea deal. The procedure of formalizing a plea offer in the United States Attorney's Office for the Eastern District of Pennsylvania at the time required: (1) the parties draft a plea agreement; (2) the line Assistant United States Attorney ("line assistant") would prepare and draft a plea authorization memorandum;[17] (3) the line assistant would submit these documents to a supervisor; (4) the supervisor would then review the plea and corresponding memorandum, possibly submit to another supervisor for review (such as a deputy chief or chief of the criminal division), and ultimately approve it; and (5) the line assistant would then finalize the plea offer and submit it to the defendant. *See* Tr. I at 186–88. Independently, the line assistant has "no authority to offer and accept or, you know, sign off on a plea agreement." *Id.* at 187 (AUSA Benjamin testimony). The supervising attorney at this time was AUSA Michelle Rotella who "is a very experienced child sex crimes prosecutor" and was very familiar with calculating the sentencing guidelines. *Id.* at 215–16. AUSA Benjamin believed that she would not get approval for any offer "below the top end of any guideline range." *Id.* at 215. A plea within a range of 135 to 168 months would have constituted a sentence at least 13 years below the low end of the proper guideline range of 324 to 405 months.

---

[17] There is extensive information encompassed in this plea authorization memo including the charges, facts of the cases, maximum and mandatory minimums, and guideline calculations. As AUSA Benjamin testified that

> before even getting to the plea agreement itself, we have what's called a plea authorization memo. We have to prepare that. And that includes information about what the defendant is charged with, what the maximum and mandatory minimums and such statutorily the defendant is exposed to, the background of the defendant, any weaknesses in the case, any strengths in the case, what the guideline calculation we believe would be, the position of the agency involved in the case as well as the position of the line assistant, if I want -- I think the plea is a good offer or not a offer or I have certain opinions on it or the agent has opinions on it.

Tr. I at 186.

*See id.* The court finds that it was unlikely that Newswanger would have been offered a plea deal any more favorable than the sentence he received. *See Frye*, 566 U.S. at 147 (requiring showing that end result of criminal process would have been more favorable for petitioner but for ineffective assistance of counsel to establish prejudice); *Shnewer*, 703 F. App'x at 90 (explaining that terms of informal plea negotiations are not determinative for purposes of predicting substance of final plea offer); *see also Penn*, 2020 WL 6701022, at *9 (holding evidence that prosecutor never drafted plea agreement, obtained approval from supervisor, nor forwarded agreement to defense demonstrates there was no formal plea offer).

Accordingly, Newswanger fails to show that but for the alleged ineffectiveness of Attorney Lin's actions, he would likely have received a sentence within the range of 135 to 168 months. *See Lafler*, 566 U.S. at 167. The government had no incentive to offer Newswanger a plea agreement, the plea negotiations did not come close to a formal or informal offer and it is unlikely that the government would have offered Newswanger a plea within the sentencing range of 135 to 168 months. "[T]o consummate a plea bargain, it takes two to tango, and there is no reason to believe that the Government wanted to dance." *See United States v. Segura*, 209 F. App'x 128, 136 (3d Cir. 2006) (holding where government did not offer plea deal, petitioner cannot show prejudice). Therefore, Newswanger cannot establish prejudice as to whether the government would have offered him a plea but for his counsel's errors. See *Byrd*, 940 F.3d at 257 ("[D]emonstrating prejudice requires that he establish a reasonable probability that but for counsel's errors, the petitioner would have received a plea offer."); *Ramirez v. United States*, 751 F.3d 604, 608 (8th Cir. 2014) (holding defendant was not prejudiced as defendant "received at most an informal plea offer" and "[h]e simply has not shown that a reasonable probability existed that the government would have extended a plea offer.").

d.  <u>No Reasonable Probability that the Court Would Have Accepted Newswanger's
Desired Plea Agreement</u>

Even if Newswanger and the government had agreed to a plea within a range of 135 to 168

months, he cannot show that the court would have accepted such a plea; as is needed to establish

prejudice. *See Lafler*, 566 U.S. at 164 (requiring reasonable probability court would have accepted

plea). The court is never bound by the stipulations of the two parties in a regular plea agreement.

*See Frye*, 132 S. Ct. at 1410; *Lafler*, 566 U.S. at 168 (explaining there is no federal right that judge

accept plea deal). The court, even though accepting the plea agreement, would still have received

the Probation Office's report, reviewed the report, and held a separate sentencing hearing. If the

parties had presented a plea agreement in the range of 135 to 168 months, but then the court

received a presentencing report that recommended 324 to 405 months, the court would most likely

have rejected the plea agreement. *See id.* To show prejudice, Newswanger must show, *inter alia*,

"a reasonable probability the plea would have been entered without the prosecution canceling it or

the trial court refusing to accept it." *Frye*, 556 U.S. 147; *Lafler*, 566 U.S. at 164 ("[Petitioner] must

show that but for the ineffective advice of counsel there is a reasonable probability that the plea

offer would have been presented to the court . . .[and] that the court would have accepted its

terms."); *United States v. Hopkins*, 568 F. App'x 143, 148 (3d Cir. 2014) (failing to find that there

was a reasonable probability that trial court would have imposed more favorable sentence if asked).

The court granted Newswanger a significant downward variance, sentencing him, *inter

alia*, to 264 months of incarceration. Newswanger has failed to demonstrate that "but for the

ineffective advice of counsel there is a reasonable probability" that that the sentence "would have

been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 566 U.S.

at 164. Because Newswanger is unable to demonstrate that it was reasonably probable that the

government would have offered him the particular deal and that the court would have accepted the

deal's terms, he cannot show prejudice for his claim that plea counsel was ineffective in plea negotiations. *See Shnewer*, 703 F. App'x at 88 (noting failure to show that particular plea deal would have been offered or that the court would accept the plea deal is fatal to ineffective assistance of counsel claim).

## **CONCLUSION**

For the reasons stated above, Newswanger has not shown that he is entitled to relief on any of the claims raised in his section 2255 motion and accordingly, the court will deny his motion.

A separate order follows.

                              BY THE COURT:


                              /s/ *Edward G. Smith*
                              EDWARD G. SMITH, J.